**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Robert Lorne SALYER, Defendant–Appellant.**

No. 89–1485.

United States Court of Appeals, Sixth Circuit.

Argued Nov. 30, 1989.

Decided Dec. 21, 1989.

Miriam R. Eisenstein, (argued), Alan W. Tieger, U.S. Dept. of Justice Criminal Section, Washington, D.C., for plaintiff-appellee.

David I. Goldstein (argued), Ann Arbor, Mich., for defendant-appellant.

Before MARTIN and NORRIS, Circuit Judges; and CONTIE, Senior Circuit Judge.

CONTIE, Senior Circuit Judge.

Defendant–Appellant Robert Lorne Salyer appeals the sentence imposed after being convicted of conspiring to threaten and intimidate Henry and Shirley Griffin in the free exercise or enjoyment of a right secured to them by the Constitution or laws of the United States in violation of 18

U.S.C. § 241. For the following reasons, we affirm the decision of the district court.

## I.

On the night of September 16–17, 1988, defendant-appellant Salyer and co-conspirator Pichler burned a wooden cross on a black neighbor's lawn. Defendant Salyer built the six-foot high wooden cross and loaded it into his station wagon. As Salyer's operators license was suspended, Pichler drove him to the home of Henry and Shirley Griffin at 715 Chilson Road, Howell, Michigan. Defendant placed the cross in the front yard of the residence and set the cross on fire. The Griffins were an elderly black couple, who were retired from government service and had moved to Howell in 1984. Mr. Griffin was suffering from cancer.

On December 8, 1988, Salyer and Pichler were charged on a three-count federal indictment: on count one, for conspiracy to violate rights of a citizen in violation of 18 U.S.C. § 241; on count two, for interference in housing rights by threat or intimidation in violation of 42 U.S.C. § 3631(a); and on count three, for use of fire in commission of a felony in violation of 18 U.S.C. § 844(h)(1). On February 14, 1989, defendant Salyer entered into a plea agreement and pled guilty to count one of the indictment. The United States agreed that upon entry of the plea, Salyer would be entitled to a two-level reduction for acceptance of responsibility under Sentencing Guideline § 3E1.1 and that his maximum sentence would be 24 months.

On April 18, 1989, the district court held a sentencing hearing. The district court calculated the offense level from the information contained in a presentence report. The base level for a violation of 18 U.S.C. § 241 is 13, Guideline § 2H1.2, *Conspiracy to Interfere with Civil Rights*. Salyer had a criminal history score of 3, for a drunk driving conviction, placing him in Category Two, which made him initially eligible for a sentence of 15–21 months. Federal Sentencing Guidelines, Sentencing Table, Chapter Five, Part A. The presentence report did not include a two-level reduction for

acceptance of responsibility because Mr. Salyer had not expressed the slightest remorse for his offense to the probation department. However, because it was part of the plea agreement, the court allowed a two-level reduction for acceptance of responsibility under Guideline § 3E1.1. The court then added two levels under Guideline § 3B1.1 because Salyer was an "organizer" and played an aggravating role in the conspiracy, and two levels under Guideline § 3A1.1 for victim vulnerability.

The presentence report stated that the Griffins first saw the cross in the early morning light on September 17th. A great fear swept through them both as they had no doubt as to what the cross represented. Mr. Griffin's pulse quickened and he suffered shortness of breath. His nurse was called immediately to administer to him. The Griffins stated that they still feel threatened. Since their move to Howell in 1984, cars have driven by their home and people from them have shouted racial slurs at them. However, this incident represented something more frightening. Mr. Griffin said that he was still suffering as he feels unable to protect his family due to his illness. He is now afraid that something even more serious will happen. Since the burning of the cross and the publicity the event received, the Griffins stated that they have received two telephone calls of a threatening nature. They had never received such telephone calls before.

The district court determined that the offense level was 15, qualifying Salyer for a sentence of 21 to 27 months. In keeping with the plea agreement, the court limited Salyer's sentence to 24 months, followed by two years of supervised release, and a $50 assessment. Counts two and three of the indictment were dismissed after defendant was sentenced on count one.

Defendant Salyer appeals the district court's decision to increase his base offense level by two points for victim vulnerability under Guideline § 3A1.1.

## II.

Defendant argues that the district court erroneously applied a two-level enhance-

ment to his sentence for victim vulnerability under Guideline § 3A1.1, which states:

> If the defendant knew or should have known that the victim of the offense was unusually vulnerable due to age, physical or mental condition, or that the victim was particularly susceptible to the criminal conduct, increase by 2 levels.

The Commentary states:

> 1. This adjustment applies to any offense where the victim's vulnerability played any part in the defendant's decision to commit the offense. The adjustment would apply, for example, in a fraud case where the defendant marketed an ineffective cancer cure or in a robbery where the defendant selected a handicapped victim. But it would not apply in a case where the defendant sold fraudulent securities to the general public and one of the purchasers happened to be senile.
>
> 2. Do not apply this adjustment if the offense guideline specifically incorporates this factor.

Guideline § 3A1.1, Application Notes One and Two.

If the two-level enhancement for victim vulnerability were not applied, defendant's offense level would be 13 with a sentencing range from 15 to 21 months.

### A.

■ Defendant Salyer first argues that it was error for the district court to apply Guideline § 3A1.1 because race, the characteristic which made victims Mr. and Mrs. Griffin vulnerable, is incorporated in the calculation of the base level of 13 for a violation of 18 U.S.C. § 241 under Guideline § 2H1.2, *Conspiracy to Interfere With Civil Rights*. Defendant argues that under 18 U.S.C. § 241 it is assumed that a victim of a civil rights conspiracy will be a member of a racial minority group. Application of Guideline § 3A1.1 for victim vulnerability is precluded because the commentary to the guideline states "[d]o not apply this adjustment if the offense guideline specifically incorporates this factor." Defendant contends that race has already been incorporated in the offense guideline

§ 2H1.2, which created an offense level of 13; it is, therefore, improper to take race into account again under the victim vulnerability enhancement, which adds another two points to the offense level. Moreover, the commentary to Guideline § 2H1.2 states, "the base level offense for this guideline assumes threatening or otherwise serious conduct." Defendant argues that the seriousness of the offense of cross burning is already taken into account by the violation of the statute.

The government argues that race is not incorporated in the statute, 18 U.S.C. § 241, or the guidelines, and it was proper to take into account the relationship between the race of the victim and the method of intimidation chosen by the defendant under Guideline § 3A1.1. The district court determined that a black person is particularly susceptible to the threat of cross burning and that defendant Salyer's means of intimidation was influenced by this vulnerability.

We find that the district court did not justify the two-level enhancement for victim vulnerability merely because race was involved, but because the defendant knew or should have known that the Griffins were unusually vulnerable to the threat of cross burning because they are black. Race is not part of the definition of the conspiracy prohibited by 18 U.S.C. § 241, which provides in relevant part:

> If two or more persons conspire to injure, oppress, threaten, or intimidate any person in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, or because of his having so exercised the same ... [t]hey shall be fined ... or imprisoned....

The federally protected right in question in the present case was the right to hold and occupy a dwelling without injury, intimidation or interference because of race and color. This right is derived from the Fair Housing Act of 1968, 42 U.S.C. §§ 3601, *et seq.* Although the civil right violated in the present case concerns race, 18 U.S.C. § 241 does not assume that a victim of a civil rights conspiracy will be a member of

a racial minority group. It could involve a conspiracy to deny interstate travel, *United States v. Guest*, 383 U.S. 745, 753–54, 86 S.Ct. 1170, 1175–76, 16 L.Ed.2d 239 (1966), or the right to procedural due process, *United States v. Price*, 383 U.S. 787, 805–06, 86 S.Ct. 1152, 1162–63, 16 L.Ed.2d 267 (1966). The civil right denied could be on the basis of sex, national origin, or religion. Therefore, race is not "built into" a violation of 18 U.S.C. § 241.

Guideline § 2H1.2, *Conspiracy to Interfere with Civil Rights* states that the offense level assumes threatening or serious conduct. However, we do not find that this precludes application of Guideline § 3A1.1, which is not concerned with the seriousness of the offense, but with the defendant's knowingly taking advantage of a particular susceptibility of the intended victim. One of the examples provided in the commentary emphasizes this point. According to Application Note One, the victim vulnerability adjustment would apply if the defendant fraudulently marketed an ineffective cancer cure. A cancer victim would be particularly susceptible to such a ploy because of the nature of the disease. In a similar manner, a black American would be particularly susceptible to the threat of cross burning because of the historical connotations of violence associated with the act. There is nothing in the statute or guidelines which already incorporates race as a factor. We therefore affirm the district court's decision to consider race under Guideline § 3A1.1.

### B.

■ Defendant Salyer next argues that the district court's factual determinations about the victims and the location of their house were clearly erroneous and do not establish victim vulnerability. Defendant contends that under the guidelines race is not a victim-related factor unless it makes the Griffins "particularly susceptible to the criminal offense." Defendant argues that blacks are not more susceptible to intimidation by cross burning than whites or other minorities. Even though blacks may statistically be more likely to be victims of

a cross burning, this fact does not mean that they are more intimidated by the act than other people.

We disagree with defendant's reasoning. Susceptibility is not defined in the guidelines, but according to *Webster's Third New International Dictionary,* it means "the state of being sensitive or predisposed." Defendant is implying that in order to fall within the language of Guideline § 3A1.1 and be "particularly susceptible," a black person must suffer more severely from the threat of cross burning than he would if he were not black. "Susceptibility" does not have to be interpreted in this way. The example given in the commentary indicates that "particularly susceptible" can also mean that one is more likely to be a victim because of a particular trait. Cancer patients are more likely than others to be victims of a bogus cancer cure. Similarly, the district court reasoned, a black person is more likely than other minorities to be the victim of a cross burning, because the act has a special capacity to evoke terror among black Americans. As the district court stated:

> There is a history of violence and intimidation which is directed against blacks and which is symbolized by a burning cross. That's exactly the symbol that these defendants chose to invoke and they chose to do so because that is precisely the way in which the family was most vulnerable to the threat of intimidation.

In *United States v. Mejia–Orosco,* 868 F.2d 807 (5th Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 3257, 106 L.Ed.2d 602 (1989), the fifth circuit noted that a court's judgment of vulnerability, which is a factual determination subject to the clearly erroneous standard, cannot be made entirely objectively.

> ["V]ulnerability" is the sort of fact which the trial court is peculiarly well-positioned to gauge, particularly in instances when the trial court has had an opportunity to observe the victim in court. In general, vulnerability is a complex fact dependent upon a number of characteristics which a trial court could not possibly

articulate completely. Certainly, a judgment as to vulnerability is not reducible to a calculation of the victim's age or to a diagnosis of the victim's disease.

*Id.* at 809. In the present case, a judgment as to vulnerability is not reducible to a calculation of who is more frightened by a cross burning—a black American or a white civil rights worker. We find that the district court's determination that cross burning is a particularly invidious act when directed against a black American, making him particularly susceptible to the commission of the offense, is not clearly erroneous.

■ Finally, defendant argues that the district court's determination that a physically and racially isolated family is more likely to be intimidated than a nonisolated one is clearly erroneous. The district court concluded that burning a cross at night in a rural area in the yard of a black family, who was living in a predominantly white community isolated from other blacks, would have a greater impact than it would in a nonrural area. Defendant contends that he and Pichler decided to burn the cross in front of the Griffins' house because the Griffins lived in defendant's neighborhood and they wanted to convey a particular message—get out of this neighborhood—not because the Griffins were isolated. Defendant argues that the degree of intimidation would be the same if the Griffins were living in an integrated neighborhood or in a neighborhood that was heavily minority.

We find that the district court properly took into account the rural location of the Griffins' residence in finding that they were particularly susceptible to the cross burning. It is of no consequence whether defendant consciously considered the Griffins' isolation in conspiring to intimidate them. Guideline § 3A1.1 imposes an adjustment for victim vulnerability "on the basis not only of what the defendant knew, but also on the basis of what [he] *should have known." United States v. Mejia–Orosco,* 868 F.2d at 810 (emphasis in original). It was not clearly erroneous for the district court to conclude that it was obvious that

the isolated setting would contribute to the Griffins' vulnerability and defendant knew or should have known of this particular susceptibility when he chose his means of intimidation.

For these reasons, the decision of the district court is affirmed.