**UNITED STATES of America**

v.

**Robert John WINSLOW, Defendant.**

**Crim. No. 90–033–N–HLR.**

United States District Court,
D. Idaho.

Jan. 17, 1991.

Maurice O. Ellsworth, U.S. Atty., Ronald D. Howen, Asst. U.S. Atty., Dist. of Idaho, Boise, Idaho, for the Government.

Douglas L. Vanderboegh, Churchill & Vanderboegh, Boise, Idaho, for Winslow.

## FINDINGS OF FACT AND STATEMENT OF REASONS

RYAN, Chief Judge.

Defendant Robert John Winslow was one of three defendants named in a four-count Superceding Indictment filed in the District of Idaho on July 12, 1990. The Superced-ing Indictment charged the defendant with violations of Title 18, United States Code § 371 (conspiracy to commit offense against the United States); Title 26, United States Code § 5861 (receiving or possessing illegal firearms); Title 18, United States Code § 1952 (interstate transportation in aid of racketeering enterprises); and Title 18, United States Code § 924 (use of a firearm during the commission of a violent crime). A jury trial was held, and the jury, on October 18, 1990, found the defendant guilty on all four counts. Thereafter, on January 11, 1991, the defendant came on for sentencing before this court.

On December 20, 1990, a presentence investigation report was prepared pursuant to Rule 32, Federal Rules of Criminal Procedure. Thereafter, counsel for each party had an opportunity to submit written objections to the presentence report, which both parties did. The probation officer revised the presentence report on January 4, 1991, and also submitted an addendum to the report on that date.

Under Rule 32, the court is required to enter findings as to any alleged factual inaccuracies in the Presentence Investigation Report or to make a determination that no such findings are necessary because the controverted matter will not be taken into account in sentencing. During the sentencing, the court made the following findings.

## I. GOVERNMENT'S OBJECTIONS

On January 2, 1991, the government filed a five-page memorandum in which it made three objections to the presentence report that related to this defendant. As to this defendant, the government argued that the vulnerable victim adjustment should be applied, the adjustment for acceptance of responsibility should not be given, and that the defendant should be given the four-level enhancement for his role in the offenses. The government also requested the court to depart upward. After the Probation Department prepared the revised report and addendum, the government, on January 9, 1991, filed its notice of objections to the

revised report, in which it expanded on its initial objections.

### A. *Vulnerable Victim Adjustments*

■ The government argued that the defendant should receive a two-level enhancement pursuant to Section 3A1.1 of the guidelines. This section provides for an enhancement "[i]f the defendant knew or should have known that a victim of the offense was unusually vulnerable due to age, physical or mental condition, or that a victim was otherwise particularly susceptible to the criminal conduct...." United States Sentencing Commission, *Guidelines Manual*, § 3A1.1 (Nov.1989). The government argued that because the evidence showed that the defendants intended to kill, wound or maim certain victims chosen solely because of their race, religion and/or sexual preference, the defendants should get the enhancement for vulnerable victims. The government also asserted that none of the four counts that the defendant was convicted of take into account that the intended victims were chosen on racial, sexual, and/or religious minority grounds.

However, the court found that the government's position was not well taken. The court stated that in its review of cases cited by the government which have applied to this adjustment, the courts only applied this adjustment if there existed actual victims.[1] The court found that in the case at bar, there was no evidence of any actual victims, but instead the only evidence was the defendants' talk and speculation concerning the intended victims. The court was not willing to hold that the potential or intended victims of this criminal conspiracy, which included a large class of minorities and homosexuals, should be considered "vulnerable victims" applicable under the guidelines.

### B. *Acceptance of Responsibility*

■ The government also objected to the two-level reduction that the defendant had received for acceptance of responsibility in paragraph 32 of the report. The government argued that absent some affirmative action on behalf of the defendant which showed that he has accepted full responsibility for his actions, the defendant should not be given this adjustment. The probation officer maintained that the defendant took this affirmative action when he provided the F.B.I. agents with admissions regarding his culpability and participation in the conspiracy, and again made those same admissions to the probation officer in the post-trial interview. Thus, the probation officer argued that the defendant has clearly demonstrated a recognition and affirmative acceptance of responsibility for his criminal conduct.

■ Section 3E1.1 of the guidelines provides for a two-level reduction "[i]f the defendant *clearly* demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct." U.S.S.G. § 3E1.1(a) (emphasis added). The court, in determining whether a defendant qualifies for this deduction, may consider whether the defendant voluntarily terminated or withdrew from the criminal conduct or associations; voluntarily paid restitution prior to adjudication of guilt; voluntarily and truthfully admitted to the authorities his involvement in the offense and related conduct; voluntarily surrendered to the authorities promptly after commission of the offense; or voluntarily assisted authorities in recovering the fruits and instrumentalities of the offense. In addition, the application notes to this section indicate that this adjustment is not intended to apply to a defendant who maintains his innocence throughout the trial, and then after conviction, admits guilt and expresses remorse. However, the comments to this section also state that "[i]n rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial." U.S.S.G. § 3E1.1, comment. (n.2) (Nov.1990). The

---

1. *United States v. Skillman*, 913 F.2d 1477, 1484–85 (9th Cir.1990), (*but see* bound volume 913 F.2d at 1477–85, editor's note which states that this opinion has been withdrawn and an amended opinion will be issued); *United States v. Boise*, 916 F.2d 497, 505–06 (9th Cir.1990); *United States v. Salyer*, 893 F.2d 113, 115–16 (6th Cir.1989).

probation officer maintains that this case presents the "rare situation" where the defendant should get the reduction. The court, considering these factors and upon review of the entire record, including the revised presentence report, the 302 report of the F.B.I. agent who took the defendant's statement after his arrest, and the testimony heard during the hearing, found that the defendant had not *clearly* demonstrated a recognition and affirmative acceptance of personal responsibility for all of his criminal conduct, especially in light of the fact that he maintained his innocence throughout the trial.

Accordingly, the court rejected paragraph 32 of the revised presentence report to the extent it concluded that the defendant is entitled to a two-level reduction for acceptance of responsibility.

### C. Adjustment for Role in the Offense

■ The government also objected to paragraph 28 which gave the defendant a two-level enhancement for being the leader or organizer of the criminal activity pursuant to Section 3B1.1 of the guidelines. The government argued that the defendant should receive a four-level increase in the offense level because the defendant was the organizer or leader of at least five individuals, including co-defendants Nelson and Baker, the informant, and two other individuals, Eric Plummer and Jeffery Ball. The government argued that the defendant recruited Plummer and Ball to assist in carrying out these crimes. In addition, the government argued that even if the court found that the defendant was not the leader or organizer of five or more individuals, he should still get the four-level enhancement under this section because he was a leader or organizer of an criminal activity that was "otherwise extensive." The government then listed those factors that it believes demonstrated that the defendant's role was "otherwise extensive."

■ The court, after reviewing the entire record, found that the probation officer's evaluation of the defendant's leadership role in this conspiracy was correct. In calculating the number of individuals that the defendant led, the court refused to consider the informant as the informant was not a criminally responsible individual and was acting under the direction of government agents. In addition, the court found by a preponderance of the evidence, that the individuals Plummer and Ball were not a part of this criminal conspiracy, as neither of these individuals were involved in any way in the procurement, planning, or detonation of any destructive devices.

The court noted the lack of any application notes or case law which helps define "otherwise extensive." However, based on the facts presented in this case, the court found that the defendant's conduct fell short of being otherwise extensive. The court based its finding on circumstances, including, but not limited to: (1) the thrust of the conspiracy only lasted from April 14 to May 12; (2) a substantial part of the evidence consisted only of a lot of talking and bragging among the defendants; and (3) the informer provided nearly all the capital to finance the criminal activity.

Based on the foregoing, the court adopted paragraph 28 of the presentence report to the extent that it found that the defendant was an organizer or a leader in a criminal activity involving less than five participants and, therefore, should be given a two-level increase pursuant to Section 3B1.1(c) of the guidelines.

## II. DEFENDANT'S OBJECTIONS

On January 2, 1991, the defendant filed a five-page memorandum, which contained essentially eight objections. The probation officer addressed these objections in his revised report dated January 4, 1991, and in the addendum to the pre-sentence report. It should be noted that the defendant also filed with the court, on December 21, 1990, a presentence memorandum which described in detail the defendant's mental health and physical health conditions. The court noted that it had reviewed this memorandum; however, under the guidelines, these mental and physical evaluations of the defendant have very little, if any, bearing on determining the sentencing range. The court stated that these evaluations

would be sent to the Bureau of Prisons, along with the presentence reports.

### A. *Paragraph 24—Base Offense Level*

■ The defendant objected to the use of Section 2A2.1, Assault With the Intent to Commit Murder, as the intended offense conduct under Section 2X1.1 which results in a base offense level of 20. The defendant argued that the probation officer's computation of the base offense level is incorrect in that it computes the base offense level on a crime that the defendant was never charged with nor which was proved at trial. The defendant further argued that the base offense level should be established by looking at each of the object offenses actually charged in the indictment, which under his theory would establish a base offense level of 18.

■ The court noted that the parties agreed that the closely-related counts in the indictment, Counts One, Two, and Three, must be grouped pursuant to Section 3D1.2. Count Four is not grouped because it involves a violation of 18 U.S.C. § 924(c), which mandates that the penalty requirement is a consecutive sentence. Once you group these other counts, the court found that the most glaring error in defendant's computation of the base offense level is that he has not computed a base offense level for the single most important count of conviction, the conspiracy count which involves a violation of 18 U.S.C. § 371. The court found that the probation officer was correct in his analysis that at trial, the evidence clearly indicated that the defendant and his co-defendant Nelson intended to bomb Neighbours Bar and thus cause the wounding, maiming or death of its occupants. The court noted that in Count One of the indictment, it did provide that the defendants conspired "with each other to make, possess, conceal and detonate destructive devices, to wit: pipe bombs ... to wound, maim or kill human beings...." Superceding Indictment filed July 12, 1990, at 1. The court was therefore compelled to follow the reasoning of the probation officer, which, pursuant to Section 2X1.1, sets a base offense level for the most important count of conviction, the conspiracy.

The court reviewed the guidelines and found that Section 2A2.1 most appropriately describes the object offense, or intended offense conduct for the conspiracy. Although the court did agree with the application of Section 2A2.1, the court found that the appropriate description of the intended offense conduct is "conspiracy to commit murder" and not "assault with intent to commit murder," both of which are provided for in Section 2A2.1, and both of which carry a base offense level of 20.

■ Further, the court found that the probation officer was correct in his analysis of Counts Two and Three, and found that in order to establish the base offense for each of those counts, you use the base offense level for the underlying crime or attempted offense, which in this case is the "conspiracy." *See* U.S.S.G. §§ 2K2.1(c)(2) and 2E1.2(a)(2). Accordingly, the court adopted paragraph 24 of the revised report as its own to the extent that it found that pursuant to Section 3D1.3, the base offense level for the grouped counts of conviction is 20.

### B. *Paragraph 26—Specific Offense Characteristics*

■ The defendant objected to paragraph 26 in that it provided for a two-level increase under Section 2A2.1(b)(1). This section provides for the enhancement if the "assault involved more than minimal planning." U.S.S.G. § 2A2.1(b)(1). The defendant argues that Section 2A2.1 does not apply at all to this case. The probation officer maintained that this section does apply, and argued that the evidence in this case clearly depicts that more than minimal planning was involved in this conspiracy. Although, the court did not agree with defendant's reasoning, the court was in agreement with the result of this objection; that is, that Section 2A2.1(b)(1) does *not* apply to this conspiracy.

As noted above, the court found that the appropriate description of the intended offense conduct was "conspiracy to commit murder" and not "assault with intent to

commit murder" as there was never an attempted assault or actual assault in this case. Therefore, the court found that the enhancement for minimal planning related to the assault is not appropriate, and therefore, the two-level enhancement should not be applied. The court stated that its position was further supported by its reasoning related to the firearm discharge enhancement discussed below.

### C. Paragraph 27—Five–Point Enhancement for April 14, 1990, Bombing

■ The defendant objected to paragraph 27 in that it provided for a five-level enhancement under § 2A2.1(b)(2). This section provides for the enhancement "[i]f a firearm was discharged." U.S.S.G. § 2A2.1(b)(2) The defendant argued that this section did not apply for two reasons. First, he argued, again, that Section 2A2.1 does not apply at all. Second, he argued that the background notes to this section specifically provide that the firearm enhancement does not apply to this offense. The court agreed with the defendant's second reason as to why this section does not apply.

As previously stated, the court found that the intended offense conduct was conspiracy to commit murder, and not assault with intent to commit murder. The only question that remains, therefore, is what, if any, enhancements apply for the specific offense characteristics under Section 2A2.-1. The application notes to this section provide that:

> Enhancements are provided for planning [subsection (b)(1)], weapon use [subsection (b)(2)], injury [subsection (b)(3)], and commission of the crime for hire [subsection (b)(4)]. All of the factors can apply in the case of an assault; *only the last can apply in the case of a conspiracy that does not include an assault ....*

U.S.S.G. § 2A2.1 comment. (backg'd.) (emphasis added). Therefore, the court found that, according to these notes, the only enhancement that can be applied in a conspiracy case that does not include an assault is subsection (b)(4), the commission of the crime for hire enhancement, which clearly was not applicable to this conspiracy. The court, therefore, found that the enhancement for the discharge of the firearm (the April 14, 1990, practice bombing) was an incorrect application of the guidelines as this conspiracy case did not involve an assault.

The court also noted that paragraph 27 was revised to reflect the fact that it was the defendant and co-defendant Baker who detonated the pipe bomb on April 14, 1990, and not the defendant and co-defendant Nelson.

### D. Paragraph 9—Fuse Length

The defendant correctly pointed out that there was no evidence that the defendant purchased 100 feet of dynamite fuse and dynamite cord. Accordingly, the probation officer corrected paragraph 9 in the revised report to reflect that the defendant had purchased a length of hobby fuse. There being no objections to the revised report, the court adopted paragraph 9 as its own.

### E. Paragraph 28—Role in the Offense Adjustment

The defendant objected to paragraph 28 to the extent it provides for a two-level enhancement under Section 3B1.1(c) for the defendant being the organizer or leader of the criminal activity. However, as the court has noted above, the court found the probation officer's evaluation as to defendant's role in the offense was correct. Therefore, the court adopted paragraph 28 as its own.

The defendant also correctly noted that in paragraph 28, the original report incorrectly stated the a bomb was detonated on February 14, 1990. The court noted that the revised report accurately reflects that the date was April 14, 1990.

### F. Paragraph 48—Mental, Emotional and Physical Health

The defendant has objected to the report in that it fails to incorporate the current psychological evaluation completed by Dr. Clay Ward, and the medical information

contained in the presentencing memorandum. The court noted that the revised report added as attachments the requested information and, as such, would be forwarded to the Bureau of Prisons. Therefore, the court adopted paragraphs 48 and 49 as its own.

### G. *Paragraph 24—Adjustment Under § 2X1.1(b)(2)*

██ The defendant also argued during oral arguments that the base offense level should be reduced by three levels pursuant to Section 2X1.1(b)(2). This section provides for a decrease by three levels, unless the defendant completed all acts necessary to complete the planned offense, or if the circumstances demonstrate that the defendant was about to complete all such acts but for his apprehension or interruption by some similar event beyond his control. The defendant argued that the defendants had not completely assembled the components they had purchased on May 12th, and further, that they did not have tools, namely a drill, to complete the assembly.

The court found, however, that the defendant was not entitled to this reduction. The court stated that the defendants had been successful in obtaining all the necessary components to build the pipe bomb, albeit they did not have a drill to make the access hole. However, the court found that their attempt to obtain a drill from Lynn Sorrenson is evidence that they intended to complete the task that they had set out to do, and were unsuccessful only because they were subsequently apprehended. The court, therefore, refused to reduce the adjusted base offense level as requested.

The court noted that it had reviewed numerous letters from friends and family; however, under the guidelines, those letters unfortunately have no effect on determining the guideline range.

### III. SUMMARY

The court found that the base offense level should be 20, with no enhancement for minimal planning, and no enhancement for the discharge of a firearm. The court further found that the defendant should receive a two-level adjustment for his role in the offense and no adjustment for victim vulnerability. Finally, the court found that the defendant is not entitled to the two-level reduction for acceptance of responsibility, nor the reduction provided for in Section 2X1.1(b)(2). Accordingly, the court found that the defendant's total offense level should be 22, which, when combined with the defendant's criminal history category of I, establishes a guideline range of 41 to 51 months.

The court, finding all other noncontroverted facts contained in the presentence report to be true and accurate, adopted the remaining findings contained in the presentence report as its own.

The defendant was sentenced to a term of imprisonment of 48 months on Count One, 48 months on Count Two, and 48 months on Count Three. The court found that the defendant's sentence under Counts Two and Three shall run concurrently with the sentence in Count One. In addition, the court reduced this sentence by 244 days for the time the defendant had served prior to sentencing. The court further sentenced the defendant to a term of imprisonment of 60 months on Count Four of the indictment, to run consecutive to his other sentence pursuant to 18 U.S.C. § 924 and Section 5G1.2 of the guidelines, with *no* credit for time served. The court further ordered that following the term of confinement the defendant was to be placed under supervised release for a period of three years, subject to the following terms and special conditions:

1. That the defendant abide by the standard terms and conditions of supervised release as recommended by the United States Sentencing Commission and as required by the Anti–Drug Abuse Act of 1988.

2. That the defendant not commit any crimes, federal, state, or local.

3. That the defendant participate in a program of alcohol aftercare as directed by his probation officer.

4. That the defendant refrain from excessive use of alcohol and not pos-

sess, use, distribute, or administer any narcotic or other controlled substance, or any paraphernalia related to such substances.

5. That the defendant shall not possess a firearm or other dangerous weapon.

6. That the defendant pay a fine in the amount of $3,500.00 for the cost of community service as directed by his probation officer.

7. That the defendant participate in mental health counseling as directed by his probation officer.

Under the sentencing guidelines, 18 U.S.C. § 3553(c), the court is required to provide its reasons for imposing a particular sentence in open court at the time of sentencing. Accordingly, the court provided the defendant with the following REASONS FOR IMPOSING THIS PARTICULAR SENTENCE:

The court finds that the sentence imposed is appropriate and necessary given the court's desire to impose a sentence that reflects the nature and circumstances of the offense, the history and characteristics of the defendant, and the seriousness of the offense.

The court finds further that the three-year term of supervised release is consistent with the mandatory minimum term set forth in Section 3583(b)(2) of Title 18, United States Code and Section 5D1.1 et seq. of the sentencing guidelines, and appropriate, given this court's desire to deter you from any future criminal activity.

The court further finds that this sentence is of the kind and within the range established under the sentencing guidelines for an offense carrying an Offense Level Total of 22 and a defendant with a Criminal History Category of I.

The court further finds that this sentence is imposed only after taking into account any and all other applicable specific offense characteristics, role-in-the-offense adjustments, and victim-related adjustments provided for under the sentencing guidelines.

The court further finds that a sentence at the upper end of the guideline range is appropriate in light of the seriousness of the offenses charged, your involvement and leadership in this criminal activity, and your culpability as compared to your co-defendants.

The government had recommended to the court that the court make an upward departure pursuant to Section 5K2.15 which allows the court, upon its discretion, to depart upward from the guideline range if the court finds that the defendant committed the offenses in furtherance of a terroristic action. The government argues that this conspiracy certainly involved domestic terrorism sufficient to warrant an upward departure. The defendant, on the other hand, has requested that the court not depart upward.

However, in light of the aforementioned factors and because the court felt that the defendant's sentence at the upper-end of the guidelines adequately meets the sentencing objectives, the court chose not to depart upward.

The court has also imposed a fine in the amount of $3,500.00 to help cover the cost of supervision. In arriving at this amount, the court has considered defendant's net disposable income, his future prospects of employment, and the budget he supplied to the United States Probation Officer. It is hoped that the fine, although it does not fully represent the actual costs of confinement and supervision, will deter future criminal conduct.

Therefore, it is the court's hope that, together, the period of incarceration, followed by a term of supervised release, will serve as adequate punitive measures to deter you from engaging in further criminal conduct, and will serve to deter others of like mind and attitude.

Finally, the court finds that this sentence was imposed after determining that there were no aggravating or mitigating factors sufficient to warrant a departure from the guideline range.

The court, following sentencing, advised the defendant further that he had a right

to appeal and that the defendant had a period of ten days from the date of sentencing within which to file a notice of appeal with the clerk of the court. Thereafter, the proceedings were adjourned.