9 F.3d 110
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Wilford H. NIECE, Defendant-Appellant.
 No. 93-5011.
 United States Court of Appeals, Sixth Circuit.
 Oct. 19, 1993.
 
 Before: MILBURN and NELSON, Circuit Judges, and GILMORE, Senior District Judge.*
 PER CURIAM.
 
 
 1
 A jury found the appellant in this case guilty of having violated 18 U.S.C. Sec. 2423, a statute that prohibits the transportation of minors in interstate commerce for illicit sexual purposes. Pointing to alleged evidentiary errors at trial and alleged mistakes in the application of the sentencing guidelines, the appellant challenges both his conviction and his sentence. We shall affirm the conviction. Concluding that the appellant's offense level was miscalculated, however, we shall remand the case for resentencing.
 
 
 2
 * A two-count indictment was returned against the appellant, Wilford H. Niece, in May of 1992. The first count charged that between May 26 and July 25, 1991, Niece violated 18 U.S.C. Sec. 2423 by transporting a 14-year-old girl from Kentucky to Virginia with the intent that she engage in sexual activity in violation of Sec. 18.2-63 of the Virginia Code.[1] The second count charged him with having violated 18 U.S.C. Sec. 924(c) by carrying or using a handgun during and in relation to a crime of violence (i.e., the crime charged in the first count). Mr. Niece pleaded not guilty to both charges.
 
 
 3
 When the case was submitted to the jury following trial, Mr. Niece was convicted on the first count and acquitted on the second. Applying the version of the United States Sentencing Guidelines that became effective on November 1, 1990, the district court sentenced him to imprisonment for six years and imposed a fine of $75,000.
 
 II
 
 4
 * Both defendant Niece and his young victim lived in Letcher County, Kentucky, which borders on the Commonwealth of Virginia. Mr. Niece was a half-owner of the "Poverty House" restaurant, located in Wise County, Virginia, a few miles over the border. He and his family and the girl and her family attended a church situated on the state line.
 
 
 5
 The families became acquainted through their church activities, and Niece's stepdaughter befriended the victim and her sister. Beginning in 1990, the two girls (then 14 and 15 years old respectively) were routinely invited to visit the Niece home on Sundays after church. It seems to have been an attractive place; Mr. Niece, who had business interests that included coal mining and trucking, owned a large house with a swimming pool, a tennis court, an exercise room, a collection of antique cars, and a stable of riding horses.
 
 
 6
 The victim testified at trial that on November 4, 1990, during one of her Sunday visits, she began a sexual relationship with Mr. Niece. (Mr. Niece was then about 50 years old.) The following summer, while the victim was out of school for vacation, she and Mr. Niece began meeting twice a week. Niece would pick her up in a pickup truck and drive her across the state line to the Poverty House. There, in an apartment attached to the restaurant, they would engage in sexual intercourse.
 
 
 7
 As far as the period covered by the indictment is concerned, it is clear that the relationship was consensual in nature. It was generally the girl who called Mr. Niece to arrange their meetings, and she knew the purpose of the Poverty House visits in advance. She did not resist going there. She testified further that Niece said he loved her and promised to give her a house and a Mercedes automobile when she turned 18.
 
 
 8
 There was evidence that Mr. Niece carried a pistol in the cab of his pickup truck. The prosecution did not contend that the victim was threatened with the weapon, but Niece did once tell her, according to her testimony, that the gun was to "take care of ... big-mouthed women."
 
 
 9
 The victim's mother learned of the trysts in mid-July of 1991. The trips to Virginia ended at that point, and the FBI was informed of the case. There is evidence that when Niece learned that the FBI had been called, he asked his stepdaughter and another friend of hers not to cooperate with the authorities. He told the stepdaughter that he would be angry if she got him in trouble, but that if she did not cooperate with the FBI she could "have anything [she] wanted." He asked the friend not to tell the grand jury what she had told the FBI. If she helped him, Niece told her, "then maybe later on down the road I can help you or I can do a favor for you."
 
 
 10
 At trial the government introduced tape recordings of telephone conversations between Mr. Niece and the victim. In these recordings, made by the victim in 1992, Niece appeared to acknowledge the sexual misconduct and implored the girl not to cooperate with the FBI investigation.
 
 B
 
 11
 The United States gave notice prior to trial that it intended to offer "other bad act" evidence under Federal Rule of Evidence 404(b).[2] Mr. Niece moved that such evidence be suppressed. After in camera consideration of the proposed evidence, the trial court denied the motion: "The alleged prior bad acts are relevant as to the defendant's modus operandi," the court wrote, "and the probative weight of such evidence would outweigh the prejudicial effect to the defendant."
 
 
 12
 At trial, over a renewed objection by Mr. Niece, the government called as witnesses the victim's sister and a young female to whom we shall refer as "L.A." The latter testified that when she was "anywhere from 15 to 17" years old, the defendant told her that "he had heard that [she] was good in bed" and offered to pay her $500 if she would meet him at a motel in Virginia. The victim's sister testified that Niece made explicit sexual advances toward her when she was fifteen years old, inviting her to have sex with him at the Poverty House and elsewhere. The sister testified that Niece offered in return to let her drive his Corvette whenever she wanted to, once she had her driver's license.
 
 
 13
 At the time the sister's testimony was given, the trial judge admonished the jury as follows:
 
 
 14
 "You may not consider this evidence to prove the defendant did the acts he is on trial for now. You may consider the other acts only for determination that they occurred for proof of intent or plan on his part and no other reason.
 
 
 15
 Remember, the defendant is on trial here for the acts charged in the indictment, not for these other acts. Do not convict him if the government has failed to prove these charges beyond a reasonable doubt."
 
 
 16
 The court gave no similar admonition in connection with L.A.'s testimony. In its instructions to the jury at the close of the trial, however, the court gave this charge:
 
 
 17
 "You've heard testimony that the defendant's committed some acts other than the ones charged in the indictment. You cannot consider this testimony as evidence that the defendant committed the crimes that he is on trial for now. Instead, you can only consider it in deciding whether the defendant had the intent to commit the charge in Count 1 (the Sec. 2423 charge). Do not consider it for any other purpose. Remember that the defendant is here on trial only for transporting [the victim] across the state line for the purpose of illegal sexual conduct and for using or carrying a firearm in relation to that crime, not for the other acts. Do not return a guilty verdict unless the government proves the crimes charged beyond a reasonable doubt."
 
 
 18
 Following his conviction on the charge of having violated Sec. 2423, Mr. Niece was sentenced under the version of the sentencing guidelines that became effective on November 1, 1990. The court determined that use of a later edition would result in a sentence greater than that allowable at the time of the offense, in violation of the Constitution's ex post facto clause. U.S. Const. Art. I, Sec. 9.
 
 
 19
 Applying Sec. 2G1.2 of the guidelines, the court fixed Niece's base offense level at 16. The court then added two levels under U.S.S.G. Sec. 2G1.2(b)(3) because the victim was twelve to fifteen years old. An additional increase of four levels was imposed under Sec. 2G1.2(b)(1), the court having determined the offense involved the use of "economic coercion." Two further increases of two levels each were imposed, one under Sec. 3A1.1 (based on a finding that the victim was unusually vulnerable because of Niece's "father figure" relationship to her), and the other under Sec. 3C1.1 (based on findings that Niece committed perjury during the trial and attempted to influence two prosecution witnesses in advance of trial). The total offense level thus came to 26. Mr. Niece had no prior criminal history of any significance, and the absence of such a history resulted in his being placed in Criminal History Category I.
 
 
 20
 The sentence range prescribed by the guidelines for these variables was imprisonment for a period of 63-78 months. The court imposed a sentence of 72 months and a fine of $75,000.
 
 III
 
 21
 * Mr. Niece contends first that the "other act" evidence presented through the testimony of L.A. and the victim's sister was inadmissible under Fed.R.Evid. 404(b). Because this evidence was relevant to the issue of the defendant's intent, however, and because the trial court was entitled to conclude that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice, see Fed.R.Evid. 403, we find no reversible error.
 
 
 22
 Under the principle embodied in Rule 404(b), as Justice Jackson explained in Michelson v. United States, 335 U.S. 469, 475-76 (1948),
 
 
 23
 "The state may not show the defendant's prior trouble with the law, specific criminal acts, or ill name among his neighbors, even though facts might logically be persuasive that he is by propensity a probable perpetrator of the crime. The inquiry is not rejected because character is irrelevant; on the contrary, it is said to weigh too much with the jury and to so overpersuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge."
 
 
 24
 Rule 404(b) is primarily a rule of inclusion, however, rather than a rule of exclusion; by its terms, evidence of other acts "may ... be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Evidence admitted for such purposes is not admitted to show the defendant's character.
 
 
 25
 Before admitting "other act" evidence under Rule 404(b), the court must undertake a two-step analysis. First, it must determine whether the evidence is admissible for a proper purpose. United States v. Feinman, 930 F.2d 495, 499 (6th Cir.1991). "The evidence must relate to a matter which is in issue and must deal with conduct substantially similar and reasonably near in time to the offenses for which the defendant is being tried." Id. The proffered evidence meets the test of admissibility for a proper purpose if the "evidence is probative of a material issue other than character." Id. (quoting Huddleston v. United States, 485 U.S. 681, 686 (1988)).
 
 
 26
 The second step of the analysis requires the court to balance the probative weight of the evidence against the dangers referred to in Fed.R.Evid. 403. Rule 403 provides as follows: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." If the unfairly prejudicial effect of the "other act" evidence predominates over its probative value, then the trial court must reject it. United States v. Rodriguez, 882 F.2d 1059, 1064 (6th Cir.1989), cert. denied, 493 U.S. 1084 (1990). We review the district court's rulings on such questions under an abuse of discretion standard. United States v. Blakeney, 942 F.2d 1001 (6th Cir.1991), cert. denied, 112 S.Ct. 881 (1992).
 
 
 27
 Mr. Niece argues that the "other act" evidence presented through the testimony of L.A. and the victim's sister was not admissible for a proper purpose. Focusing on the pretrial order denying the motion to suppress the girls' testimony, he points to the fact that the order said the evidence was admissible to prove Niece's "modus operandi." A prosecutor is only allowed to introduce modus operandi evidence, Mr. Niece argues, to identify the accused as the perpetrator of a crime; by showing a similar pattern, the prosecutor attempts to show that the same person was involved in each instance. Identity was not at issue here, of course, so Mr. Niece says that modus operandi evidence was inadmissible. See United States v. Fountain, 2 F.3d 656, 668 (6th Cir. Aug. 9, 1993) (holding "modus operandi" evidence inadmissible where identity not at issue).
 
 
 28
 The problem with this argument is that the instructions given to the jury did not deal with modus operandi. The jury was repeatedly instructed that the evidence was to be considered only in connection with the question of plan or intent. As far as the jury was concerned, the testimony of the two girls was admitted only as proof that Niece intended or planned to take the victim to Virginia for the purpose of committing illegal sexual acts with her there.
 
 
 29
 18 U.S.C. Sec. 2423 is a specific intent offense. The prosecution had the burden of proving beyond a reasonable doubt that when Niece crossed the state line with the victim in his truck, he did so intending that she engage in proscribed sexual activity with him on the other side of the line. See United States v. Vik, 655 F.2d 878, 881-82 (8th Cir.1981). Where specific intent is a necessary element of the crime charged, a general plea of not guilty places intent at issue and makes intent a "proper purpose" for which extrinsic act evidence can be offered. United States v. French, 974 F.2d 687, 695 (6th Cir.1992), cert. denied, 113 S.Ct. 1012 (1993); United States v. Hamilton, 684 F.2d 380, 384 (6th Cir.), cert. denied, 459 U.S. 976 (1982); United States v. Smith, 995 F.2d 662, 672 (7th Cir.1993).
 
 
 30
 The prior acts recounted by the two girls here were sufficiently similar in nature and near in time to the alleged criminal conduct to be admissible under Rule 404(b). "[W]here evidence of prior bad acts is admitted for the purpose of showing intent, the prior acts need not duplicate exactly the instant charge, but need only be sufficiently analogous to support an inference of criminal intent." United States v. Benton, 852 F.2d 1456, 1468 (6th Cir.), cert. denied, 488 U.S. 993 (1988).
 
 
 31
 Both L.A. and the victim's sister described instances where Niece had proposed having sexual intercourse in the Commonwealth of Virginia with minor females who were friends of his family. Like the conduct covered by the indictment, the sexual favors allegedly solicited from the witnesses would have violated Virginia law. The incidents described by the two girls tended to prove that Mr. Niece's conduct with the victim was not simply fortuitous--that when he transported her into Virginia, he did so with the intent that she go to bed with him there. See United States v. Drury, 582 F.2d 1181, 1184-85 (8th Cir.1978) ("in order to establish the intent required for a [violation of the] Mann Act [a statute identical to Sec. 2423 except for the age requirement], the prosecution may admit into evidence testimony that the defendant had solicited girls on prior occasions"). Cf. United States v. Jarrett, 956 F.2d 864, 867 (8th Cir.1992) (same).
 
 
 32
 The trial court did not abuse its discretion in determining that the danger of unfair prejudice or confusion did not substantially outweigh the probative value of the extrinsic act evidence. As the Supreme Court has recognized, "[e]xtrinsic acts evidence may be critical to the establishment of the truth as to a disputed issue, especially when that issue involves the actor's state of mind and the only means of ascertaining that mental state is by drawing inferences from conduct." Huddleston v. United States, 485 U.S. 681, 685 (1988). Such was the case here. We recognize that evidence of other instances of illegal sexual conduct may have a greater potential for prejudice than "other acts" evidence of a less repugnant nature, see 2 Jack B. Weinstein & Margaret A. Berger, Weinstein's Evidence p 404 (1992), but the balance struck by the district court in this case did not represent an abuse of discretion and the cautionary instructions given the jury tended to minimize the risk of unfair prejudice. After considering the record of the trial as a whole, we are not persuaded that the admission of the "other acts" evidence entitles Mr. Niece to a new trial.
 
 B
 
 33
 Mr. Niece contends next that the trial court erred in applying Fed.R.Evid. 412, the federal rape shield rule, to prevent interrogation of the victim about her prior sexual history. Again we are not persuaded; we do not think the trial court was required to let the jury hear the testimony which Mr. Niece wanted to elicit.
 
 
 34
 Niece sought to show that the victim was not a virgin when he began his relationship with her. He contended that such evidence would have a bearing on her credibility, because she had "stated at least on 2 or 3 other occasions [outside the courtroom] ... that she had never had sex with anyone other than Mr. Niece." Niece wanted to impeach the girl's credibility by showing that she had not been truthful in her alleged extrajudicial statements. The trial court sustained the prosecution's objection on the basis of Fed.R.Evid. 412.
 
 
 35
 The text of Rule 412(b), the subsection at issue here, begins as follows:
 
 
 36
 "Notwithstanding any other provision of law, in a criminal case in which a person is accused of an offense under chapter 109A of title 18, United States Code, evidence of a victim's past sexual behavior other than reputation or opinion evidence is also not admissible...." (Emphasis added.)
 
 
 37
 Before an amendment that became effective in 1988, the italicized passage had read "in a criminal case in which a person is accused of rape or of assault with intent to commit rape."
 
 
 38
 By its plain and unambiguous language, Rule 412 now applies only to prosecutions brought under Chapter 109A of Title 18. The crimes with which Niece was charged are not covered by that chapter. The section he was found to have violated, 18 U.S.C. Sec. 2423, is part of Chapter 117. The section he was found not to have violated, 18 U.S.C. Sec. 924(c), is codified in Chapter 44.
 
 
 39
 Regardless of the applicability of Rule 412, however, the trial court clearly had discretion to exclude the evidence which Mr. Niece was trying to place before the jury. The victim said nothing about her sexual history during direct examination. Niece's strategy was to ask her on cross-examination whether she had lost her virginity before Niece came along, elicit a denial, and then adduce extrinsic evidence to impeach her denial. The trial court took a dim view of this strategy:
 
 
 40
 "She might have had sex with 3 or 4 other people. That may well be. But it is simply not relevant here."
 
 
 41
 Although litigants are entitled to introduce extrinsic evidence to contradict a witness' testimony on matters that are material to the merits of a case, they have no right to do so with respect to collateral or irrelevant matters. Jones v. Southern Pacific R.R., 962 F.2d 447, 450 (5th Cir.1992). Interjection of such matters may confuse the jury, and if the collateral matters reflect adversely on the morals of the witness, the jury may be prejudiced against the witness' side. 3 Jack B. Weinstein & Margaret A. Berger, Weinstein's Evidence Sec. 607 (1992). In light of the "significant discretion left to the trial court" in determining the proper scope of impeachment evidence on collateral matters, we cannot say that the court abused its discretion in excluding evidence of the victim's sexual history. See United States v. Markarian, 967 F.2d 1098, 1103 (6th Cir.1992), cert. denied, 113 S.Ct. 1344 (1993).
 
 IV
 
 42
 The sentence imposed by the district court is challenged here on the following grounds: (1) that the district court erred in applying the 1990 edition of the sentencing guidelines rather than the version in effect at the time of trial; (2) that the court violated Niece's Fifth Amendment rights by treating the imposition of a prison term as mandatory; (3) that it was improper to increase the offense level on the basis of "economic coercion;" (4) that the "vulnerable victim" increase was improper; and (5) that the fine was imposed improperly.
 
 
 43
 * As the government correctly observes, Mr. Niece waived any argument against the application of the 1990 version of the sentencing guidelines by failing to make a timely objection to the use of that version. A presentence report furnished to Mr. Niece prior to sentencing stated clearly that the 1990 guidelines were to be applied to avoid possible ex post facto problems. (Under Miller v. Florida, 482 U.S. 423 (1987), guideline amendments that have taken effect after the commission of a crime may not be applied to increase the punishment beyond that provided for at the time the crime was committed. Subject to that exception, a court is required to apply the version of the guidelines in effect at the time of trial. 18 U.S.C. Sec. 3553(a)(4).)
 
 
 44
 Mr. Niece filed six pages of written objections to the report, but these objections did not extend to use of the 1990 guidelines. At the sentencing hearing, the judge specifically referred to the 1990 guidelines:
 
 
 45
 THE COURT: ... The base offense level in this matter is a level 16 as set forth in the November 1, 1990 edition of the Sentencing Guidelines.
 
 
 46
 There's no problem with that base offense level, is there?
 
 
 47
 MR. GRISE [AUSA]: No, Judge.
 
 
 48
 MR. BAYER [Defendant's counsel]: I think that's probably appropriate to begin with, Judge."
 
 
 49
 No objection to using the 1990 guidelines was made at any point in the sentencing hearing. On appeal, however, Mr. Niece contends for the first time that the 1992 guidelines would have yielded a lower sentence than the one he received under the 1990 version.
 
 
 50
 Except where plain error has occurred, it is the general practice of this court not to consider on appeal issues not raised before the trial court. United States v. Pickett, 941 F.2d 411, 415 (6th Cir.1991); United States v. Chalkias, 971 F.2d 1206, 1212 (6th Cir.), cert. denied, 113 S.Ct. 351 (1992). Plain error includes only such errors as "seriously affect the fairness, integrity or public reputation of judicial proceedings." United States v. Young, 470 U.S. 1, 15 (1985). The circumstances of this case are not such as to trigger the plain error exception.
 
 B
 
 51
 Mr. Niece argues that his Fifth Amendment due process rights were violated by an application of the sentencing guidelines that made a prison term mandatory. 18 U.S.C. Sec. 2423 provides that a violator is to be "fined under this title or imprisoned not more than ten years, or both," and the indictment reiterated that Mr. Niece was subject to either ten years' imprisonment, a fine, or both. Mr. Niece says that he was deprived of his liberty without due process because the indictment failed to give him notice that conviction would result in mandatory imprisonment under the guidelines.
 
 
 52
 Mr. Niece has cited no case, and we know of none, holding that an indictment must specify the maximum and minimum penalties to which the accused would be subject upon conviction. All that is required is that an indictment "first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." Hamling v. United States, 418 U.S. 87, 117 (1974). These requirements were met here.
 
 
 53
 Rule 7 of the Federal Rules of Criminal Procedure, which governs indictments, does not require that a penalty be specified. Mr. Niece was nonetheless informed by the indictment that he might be imprisoned for up to ten years and fined up to $250,000. This information was accurate, and we see no constitutional infirmity in the sentence imposed.
 
 C
 
 54
 Mr. Niece contends next that it was error for the district court to impose a four-level increase in the offense level under U.S.S.G. Sec. 2G1.2. Section 2G1.2 reads as follows: "If the offense involved the use of physical force, or coercion by threats or drugs or in any manner, increase by four levels."
 
 
 55
 The theory under which the court found this increase proper was that Niece had used "economic coercion" against his victim when he promised to buy her a car and otherwise provide for her materially after she turned eighteen. The court stated that Niece's promises "had an impact on the voluntariness of her conduct" warranting the increase.
 
 
 56
 Niece argues that "economic coercion" of the type discerned by the trial court does not fall within the scope of Sec. 2G1.2. He points to abundant evidence that the victim's conduct was not involuntary, as well as the absence of any evidence that he used physical threats or force against her. He notes that the supposed "economic coercion" did not subvert the victim's ability to say "yes" or "no," and he observes that the promises in question were not made until after the course of illegal conduct had commenced, and thus were not instrumental in gaining the victim's consent thereto.
 
 
 57
 The official commentary on Sec. 2G1.2 lends considerable weight to Mr. Niece's argument. What the commentary says is this:
 
 
 58
 " 'Coercion,' as used in this guideline, includes any form of conduct that negates the voluntariness of the behavior of the person transported. This factor would apply, for example, where the ability of the person being transported to appraise or control conduct was substantially impaired by drugs or alcohol."
 
 
 59
 The nature of "coercion," as recognized by the commentary, is that it deprives an individual of the ability to make choices with reasonable freedom. This is the meaning of "negat[ing] the voluntariness" of behavior. The coercer, in essence, leaves the coerced with but one choice. He does this by threatening an imminent loss of some kind (as by physical threats), or by use of substances (alcohol or drugs) that impair the normal psycho-physical processes of reasoning. Neither drugs nor alcohol played any role here, and the trial court found--correctly, no doubt--that Mr. Niece employed no threat of physical force against the victim.
 
 
 60
 Mr. Niece did not give the victim to understand that she would be worse off if she refused him; he promised to make her better off. Such promises do not foreclose the possibility of choice, at least in the case of someone as old as fourteen. We are satisfied that the promises did not deprive the victim of the ability "to appraise or control" her conduct. There appears to be no caselaw supporting the conclusion that Sec. 2G1.2(b)(1) extends to promises of future bounty, and based on the age of the victim and the context and everyday meaning of the terms involved, we hold that Sec. 2G1.2 should not have been invoked here.
 
 
 61
 Without the four-level increase under Sec. 2G1.2, Mr. Niece's offense level would have been 22. The guideline range for this level, in the case of a person in Criminal History Category I, is imprisonment for 41-51 months. Mr. Niece having been sentenced to a term of 72 months, it appears that his sentence was at least 21 months too high.
 
 D
 
 62
 Mr. Niece contends next that the district court should not have increased the offense level under Sec. 3A1.1. Section 3A1.1 says this: "If the defendant knew or should have known that a victim of the offense was unusually vulnerable due to age, physical or mental condition, or that a victim was otherwise particularly susceptible to the criminal conduct, increase by 2 levels." The district court did not invoke the victim's age, which had already been accounted for in the two-level increase under Sec. 2G1.2(b)(3). The court relied, rather, on what it described as the defendant's "father figure" relationship to the victim.
 
 
 63
 Numerous cases confirm that the vulnerability upon which a Sec. 3A1.1 enhancement is predicated need not be restricted to the specifically enumerated factors of age or physical or mental condition. In United States v. Salyer, 893 F.2d 113 (6th Cir.1989), this court approved a victim vulnerability enhancement based on the race of the victims and the location of their residence. In United States v. Chick, No. 90-2200, 1992 U.S.App. LEXIS 3350 (6th Cir., Feb. 14, 1992), we affirmed such an enhancement based on a former marital relationship between the defendant and his victim. In United States v. Williams, 963 F.2d 374 (6th Cir., May 19, 1992), a case involving the smuggling of illegal aliens, we upheld a vulnerability enhancement based on "language barriers and cultural limitations" experienced by the aliens and on their separation from family members while in transit.
 
 
 64
 The caselaw teaches that the open-ended language of Sec. 3A1.1 can justify enhancement whenever the court is faced with a victim who: (1) based on the totality of the circumstances, (2) appears to possess traits that made him or her particularly susceptible to being victimized, (3) by the kind of criminal conduct that actually occurred, (4) where the traits in question played a significant role in the individual's being singled out for victimization by * 110 the criminal perpetrator. A quasi-familial "father figure-daughter" relationship does not fall outside the range of relationships upon which a finding of victim vulnerability can be predicated, given appropriate evidence and factual findings.
 
 
 65
 In the case at bar the district court's determination that the victim was particularly susceptible was based on evidence that Niece held himself out to the family as a kind of surrogate father and that he was accepted as such by the victim and her sisters, that in their eyes he occupied a position of trust; and that he enjoyed unusual access to their company. The court's finding of victim vulnerability was not clearly erroneous.
 
 E
 
 66
 Mr. Niece maintains, finally, that the court erred in imposing a fine without making any formal findings under Sec. 5E1.2(d). In view of the fact that a resentencing is required in any event, we need not address this claim. We shall vacate the sentence in its entirely, including the fine, and give the district court an opportunity to revisit the question of a fine under the newly-set offense level.
 
 
 67
 We are confident that any imposition of a fine will be handled in accordance with the requirements of Sec. 5E1.2. That section requires a district court to consider several factors in imposing a fine, but creates a presumption in favor of a fine sufficient to have a punitive impact. In light of this presumption, a court is to consider such issues as the defendant's ability to pay, the burden that a fine would place upon the defendant's family, and collateral consequences (such as civil liability) arising from the criminal conduct. See generally United States v. Hopper, 941 F.2d 419, 423 (6th Cir.1991).
 
 
 68
 The conviction is AFFIRMED, the sentence is VACATED, and the case is REMANDED for resentencing.
 
 
 
 *
 The Honorable Horace W. Gilmore, Senior United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 Section 18.2-63 makes it a crime for any person to "carnally know[ ], without the use of force, a child 13 years of age or older but under 15 years of age." 18 U.S.C. Sec. 2423 reads as follows:
 "Whoever knowingly transports any individual under the age of 18 years in interstate or foreign commerce, or in any Territory or Possession of the United States, with intent that such individual engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense, shall be fined under this title or imprisoned not more than ten years, or both."
 
 
 [2]
 Fed.R.Evid. 404(b) provides as follows: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial." The prosecution provided the appropriate pretrial notice here