**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Priscilla SMITH, Defendant–Appellant.**

**No. 94–5113.**

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 14, 1994.

Decided Nov. 9, 1994.

Hilliard H. Hester, Asst. U.S. Atty. (argued and briefed), Office of the U.S. Atty., Nashville, TN, for plaintiff-appellee.

Henry A. Martin, Fed. Public Defender (argued and briefed), Federal Public Defender's Office, Nashville, TN, for defendant-appellant.

Before MILBURN, RYAN, and NORRIS, Circuit Judges.

RYAN, Circuit Judge.

Defendant, Priscilla Smith, appeals her conviction and sentence for six counts of wire fraud, in violation of 18 U.S.C. §§ 1343 and 2; two counts of mail fraud, in violation of 18 U.S.C. §§ 1341 and 2; and two counts of money laundering, in violation of 18 U.S.C. §§ 1956 and 2. The district court increased the defendant's sentence under the victim vulnerability provision of the sentencing guidelines, U.S.S.G. § 3A1.1.

The defendant claims on appeal that there was insufficient evidence for the jury to find that she possessed the intent to defraud and that she knew that the money was generated by unlawful activity. She also claims that the district court erred in increasing her sentence under the victim vulnerability provision. We hold that there was sufficient evidence to support the conviction and, therefore, affirm the conviction. We also hold that the district court clearly erred when it applied the victim vulnerability provision to Smith's sentence. We, therefore, vacate the sentence and remand for resentencing.

## I.

In September 1992, Priscilla Smith used a false social security number to open a bank account for a new business called "American Clearinghouse." Through November 1992, the employees of American Clearinghouse telephoned individuals around the country telling them they won a valuable prize, either a car, cash, or gold bars. They were also told that Ed McMahon would personally award the prize to them. However, in order to collect the prize, they were told they would have to pay taxes and promotional fees in advance. Fifteen people sent checks to American Clearinghouse totaling $53,380 but none received the promised prizes. The people contacted were individuals who had made purchases in a recent promotion by Master Care, Inc., a vendor of health and safety items.

The defendant received the checks at a post office box and then deposited the money into the company account. She personally wrote checks on this account to pay for various business expenses. She also wrote many checks payable to cash.

When some of the prize winners did not receive their prizes, they called the American Clearinghouse office. They reached an answering service and left messages. Smith received these complaints and forwarded them to her boss, Mitch Thompson. Thompson was Smith's high school sweetheart; Thompson and Smith were romantically in-

volved during the operation of this and similar schemes organized later. Thompson allegedly told Smith that he would take care of the complaints. Smith, however, did give one caller a promissory note for $5,000 as an attempt to refund her money. American Clearinghouse ceased operations in November 1992. Smith closed the bank account in February 1993.

Also in February 1993, Smith opened a bank account for a business called "Unitel Marketing" using a false social security number. From February to March 1993, approximately thirty-four people were contacted by persons claiming to be representatives of Unitel Marketing. Each was told they had won a prize because of their recent purchase from Master Care. Again, each was told that, in order to receive the prize, taxes and promotional fees had to be paid in advance. Thirty-four people sent payments as directed but none received prizes. At least two individuals who sent checks to Unitel were called and falsely told that their checks had been inadvertently destroyed. Unitel requested they send another, which they did.

Again, when the prize winners did not receive their prizes, they called and left messages with the answering service. The defendant sent form letters to some of the complaining parties stating that the prize awards would be delayed and that Unitel Marketing was undergoing an internal audit.

Smith deposited the proceeds of the Unitel scheme which totaled $77,250. She drew upon these funds to pay business expenses and disbursed cash to herself. She was arrested at the bank just before making a deposit. Earlier that day, she told witnesses that she was planning to go to Mexico but that Unitel would remain in operation. Upon her arrest, Smith claimed that she was only a bookkeeper for the companies. A total of $129,280 was received as a result of the two schemes.

Some of the victims of the scam were elderly; all had recently made a purchase from Master Care through a promotion in which purchasers were eligible to win the identical prizes that American Clearinghouse and Unitel Marketing had notified them they had won. Master Care claims that its customer list was pirated from its computers. The list contained names, addresses, telephone numbers, and items purchased by participants in the promotion but no other personal data such as the ages of the customers. Master Care sells health and safety items such as vitamins, water purification systems, home security, and fire retardants.

The defendant claimed at trial that she did not know anything illegal was going on. She stated that Thompson ran the business and that anything she did in connection with the business was done at his direction.

After a trial, the jury returned a verdict of guilty on all counts. At sentencing, the court added two points for victim vulnerability pursuant to U.S.S.G. § 3A1.1. Smith was sentenced to 120 months in prison.

The defendant appeals her conviction and sentence and urges this court to reverse her conviction, or, alternatively, to remand for resentencing.

## II.

The defendant argues that a rational trier of fact could not have found that she had the requisite intent for any of the crimes of which she was convicted and that there was insufficient evidence proving that she knew that the monies involved in the financial transactions were the proceeds of unlawful activity, an essential element of the money laundering charge. Therefore, Smith argues, her conviction was based on insufficient evidence and should be reversed. In reviewing a claim of insufficient evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

The elements of mail fraud are: (1) a scheme to defraud; and (2) use of the mails in furtherance of the scheme. *Pereira v. United States,* 347 U.S. 1, 8, 74 S.Ct. 358, 362–63, 98 L.Ed. 435 (1954). In order to be prosecuted under the mail fraud statute, the defendant must possess the specific intent to

deceive or defraud. *Epstein v. United States,* 174 F.2d 754, 765 (6th Cir.1949). The issue of fraudulent intent is an issue for the jury to determine. *United States v. Bibby,* 752 F.2d 1116, 1127 (6th Cir.1985), *cert. denied,* 475 U.S. 1010, 106 S.Ct. 1183, 89 L.Ed.2d 300 (1986).

■ The elements of wire fraud are: (1) a scheme to defraud and (2) use of an interstate electronic communication in furtherance of the scheme. *United States v. Morelli,* 643 F.2d 402, 411–12 (6th Cir.), *cert. denied,* 453 U.S. 912, 101 S.Ct. 3143, 69 L.Ed.2d 994 (1981). The prosecution must also prove intent to defraud in order to convict the defendant.

■ In order to convict the defendant of money laundering, the prosecution must prove that the defendant: (1) knowingly conducted a financial transaction; (2) was using funds which had come from a specified unlawful activity; (3) knew that the money was from a specified unlawful activity; and (4) participated in the transaction with the intent to conceal or disguise the nature or source of the funds involved. *United States v. Beddow,* 957 F.2d 1330, 1334 (6th Cir.1992).

"As a court of review, [this court] must draw all available inferences, and resolve all issues of credibility, in favor of the jury's verdict." *Brown v. Davis,* 752 F.2d 1142, 1147 (6th Cir.1985). The jury's resolution of questions of credibility and demeanor is entitled to special deference. *Id.; see also Patton v. Yount,* 467 U.S. 1025, 1038, 104 S.Ct. 2885, 2892, 81 L.Ed.2d 847 (1984).

There was ample evidence presented for the jury to find that Smith intended to defraud and that she knew the money was generated by unlawful activity. The evidence showed that: (1) she told the answering service the nature of the business was conducting paper surveys; (2) she opened the bank account with a knowingly false social security number; (3) she received the checks at a post office box and then deposited the money; (4) she wrote many checks for cash; (5) Smith received complaints and forwarded them to her boss, Thompson; (6) Smith gave one caller a promissory note for $5,000 as an attempt to refund her money;

(7) she then repeated the process all over again. With no explanation, she closed down the business and reopened another within weeks; (8) she again used a false social security number to open the bank account; (9) the defendant sent form letters to some of the complaining parties stating that the prize awards would be delayed and that Unitel Marketing was undergoing an internal audit; (10) when one prize winner reached her personally, she used an alias, Kay Ikenberger; (11) Smith deposited these checks as well, totaling $77,250; (12) she again disbursed cash to herself; and (13) she told witnesses earlier that day that she was planning to go to Mexico.

A rational trier of fact could have found beyond a reasonable doubt that Smith possessed the requisite intent and knowledge to support her conviction of the offenses charged.

### III.

■ The defendant argues that the district court erred in increasing her sentence under the victim vulnerability provision of the sentencing guidelines because the defendant did not target individuals with unusual vulnerabilities.

■ Factual findings for application of the sentencing guidelines need not be based on proof beyond a reasonable doubt, but need only be supported by a preponderance of the evidence. *United States v. Carroll,* 893 F.2d 1502, 1506 (6th Cir.1990). This court applies a clearly erroneous standard of review to the district court's factual findings, and, while giving due deference to the district court's application of the guidelines to those facts, it renders *de novo* review of the district court's legal conclusions. *United States v. Garner,* 940 F.2d 172, 174 (6th Cir.1991).

U.S.S.G. § 3A1.1 provides: "If the defendant knew or should have known that a victim of the offense was unusually vulnerable due to age, physical or mental condition, or that a victim was otherwise particularly susceptible to the criminal conduct, increase by 2 levels."

The commentary to the vulnerable victim provision states:

This adjustment applies to offenses where an unusually vulnerable victim is made a target of criminal activity by the defendant. The adjustment would apply, for example, in a fraud case where the defendant marketed an ineffective cancer cure or in a robbery where the defendant selected a handicapped victim. But it would not apply in a case where the defendant sold fraudulent securities by mail to the general public and one of the victims happened to be senile. Similarly, for example, a bank teller is not an unusually vulnerable victim solely by virtue of the teller's position in a bank.

U.S.S.G. § 3A1.1, comment. (n.1).

The Presentence Report did not recommend a two level increase for victim vulnerability. However, the district court increased Smith's base offense level under this provision. The court stated at sentencing:

The vulnerability of the victims, another two points will be added. She took advantage of people that were vulnerable, took advantage of the least strong in our society.

I watched these people come in here and testify and you took their money, people that were widowing, people living on a pension and you took their money, Ms. Smith.

The circuits are in disagreement as to what is required to enhance a sentence under the victim vulnerability provision. Most circuits require that the defendant have actually targeted the victims because of their vulnerability. For example, the Eighth Circuit, in *United States v. Cree*, 915 F.2d 352 (8th Cir.1990), held that "enhancing a defendant's sentence based on victim vulnerability is justified only when a defendant's actions in some way exploited or took advantage of that vulnerability." *Id.* at 354. The court refused to apply the provision to a defendant whose victim just "happened to be" intoxicated at the time the defendant purposely crashed into his car and who was not chosen as a target because of his intoxication. In *Cree*, even though the defendant knew his victim was drunk and would be more vulner-

able, the court refused to apply the provision because the defendant did not choose his victim because of his drunkenness. *Id.*

Similarly, in *United States v. Wilson*, 913 F.2d 136 (4th Cir.1990), a defendant mailed solicitation letters at random to residents of Raleigh, North Carolina, requesting donations to assist victims of a tornado. The City of Raleigh had just recently been damaged by a tornado. The court held that the district court erred in applying the victim vulnerability provision. *Id.* at 138.

In *United States v. Sutherland*, 955 F.2d 25 (7th Cir.1992), the Seventh Circuit held that "[i]n a fraud case where the defendant issues an appeal to a broad group, the court should focus on whom the defendant targets, not on whom his solicitation happens to defraud." *Id.* at 26. The court so held because of the commentary to the sentencing guidelines which states that the vulnerable victim adjustment would not apply "where the defendant sold fraudulent securities by mail to the general public and one of the victims happened to be senile." U.S.S.G. § 3A1.1, comment. (n.1). The court also arrived at this holding because the adjustment is designed to punish defendants who choose their victims because they are vulnerable.

Other circuits, however, apply the provision differently. For example, the Ninth Circuit, in *United States v. Boise*, 916 F.2d 497 (9th Cir.1990), *cert. denied*, 500 U.S. 934, 111 S.Ct. 2057, 114 L.Ed.2d 462 (1991), applied the provision to a father who severely beat and killed his son. The court held that the provision was appropriately applied because a six-week old infant is unusually vulnerable due to age even though the father did not select him as a victim because of his vulnerability. *Id.* at 506.

This circuit has addressed the victim vulnerability provision infrequently and generally in unpublished opinions. For example, in *United States v. Parillo*, No. 91–3592, 1992 WL 179243, 1992 U.S.App. LEXIS 18515 (6th Cir. July 28, 1992) (per curiam), the defendant illegally solicited insurance policies. The defendant targeted Ohio residents over the age of 55 who earned more than $30,000 a year. This circuit held that the

government failed to prove that the victims of the fraudulent scheme were particularly vulnerable because of age to warrant an enhancement, because age and income alone do not make individuals unusually vulnerable. *Id.* at *4, 1992 U.S.App. LEXIS 18515, at *14.

In *United States v. Salyer*, 893 F.2d 113 (6th Cir.1989), this circuit held that black victims of a cross-burning were vulnerable victims under U.S.S.G. § 3A1.1 because of the historical connotation of violence associated with the act. *Id.* at 116.

In *United States v. Williams*, No. 91–1989, 1992 WL 107018, 1992 U.S.App. LEXIS 12109 (6th Cir. May 19, 1992) (per curiam), the defendant was convicted of attempting to smuggle aliens into this country. This circuit stated that "[v]ictim vulnerability adjustments apply to offenses where an unusually susceptible victim is made a target of the defendant's criminal activity. Susceptibility means that 'one is more likely to be a victim because of a particular trait.'" *Id.* at *2, 1992 U.S.App. LEXIS 12109, at *4 (citations omitted). The court in *Williams* held that the female victims were vulnerable because of the following factors: (1) language barriers; (2) cultural limitations; (3) they were seeking reunion with their husbands; (4) they were travelling alone without any luggage; and (5) they had left family members behind. *Id.* at *2, 1992 U.S.App. LEXIS 12109, at *4–5.

In another unpublished opinion, this circuit stated that an enhancement is warranted under the victim vulnerability provision when the court is faced with a victim who:

(1) based on the totality of the circumstances, (2) appears to possess traits that made him or her particularly susceptible to being victimized, (3) by the kind of criminal conduct that actually occurred, (4) where the traits in question played a significant role in the individual's being singled out for victimization by the criminal perpetrator.

*United States v. Niece*, No. 93–5011, 1993 WL 424960, at *9, 1993 U.S.App. LEXIS 27327, at *27 (6th Cir. Oct. 19, 1993) (per curiam). The defendant in *Niece* was convicted of transporting a young girl across state lines with the intent to engage in sexual activity. The evidence showed that the relationship was consensual and that the defendant had become a father-figure to the young girl. The court held that it was not clearly erroneous for the district court to enhance the sentence under the victim vulnerability provision when the district court found that: (1) the defendant held himself out to the victim's family as a surrogate father and was accepted as such by the victim and her sisters; (2) the victim and her family trusted him; and (3) the defendant had unusual access to the family. *Id.* at *10, 1993 U.S.App. LEXIS 17327, at *28.

We think that those courts that apply the victim vulnerability provision when evidence shows that the defendant targeted his victims because of an unusual vulnerability have captured the intended meaning of the guidelines. This approach is consistent with the commentary to the victim vulnerability provision which states that the provision applies when an "unusually vulnerable victim is made a target of criminal activity by the defendant." U.S.S.G. § 3A1.1, comment. (n.1). This approach also effectuates the purpose of the victim vulnerability provision which is to punish defendants who choose their victims because they are vulnerable. The purpose of the provision is not to punish defendants who perpetrate crimes on victims who are coincidentally vulnerable in some way. This is evidenced by the portion of the comment that states that the provision would not apply, "in a case where the defendant sold fraudulent securities by mail to the general public and one of the victims happened to be senile." *Id.* Therefore, in order to enhance a defendant's base offense level under U.S.S.G. § 3A1.1, the evidence must show that the defendant knew his victim was unusually vulnerable and that he perpetrated a crime on him because he was vulnerable. It is not enough to show that the victim happened to be vulnerable at the time the crime occurred.

In the present case, there is no evidence suggesting that Smith chose her victims because of any particular vulnerability. Although the district court at sentencing noted that one victim had cancer and that one was a widower, these findings are unsupported by the record. It is clear from the record that some of the victims were elderly and that one had Parkinson's disease. Even if it be as-

sumed that these circumstances are characteristics of "unusual" vulnerability, they are not justifications for increasing the sentence under the victim vulnerability provision. There was no evidence presented that there was any correlation between those potential vulnerabilities and the fraudulent scheme; it was more coincidental than intentional. The list of names that Smith's companies used contained only names, addresses, and phone numbers of individuals who had purchased items from Master Care and the items they purchased. It did not reveal any information about age or infirmities. This case is analogous to the hypothetical in the commentary to the victim vulnerability provision wherein the defendant sold fraudulent securities by mail to the general public and one of the victims happened to be senile. In that situation, the comment instructs the courts that it is not appropriate to apply the provision. Thus, the district court's decision to increase Smith's base offense level under the victim vulnerability provision was clearly erroneous.

The judgment of the district court is **AFFIRMED** in part and **REVERSED** in part. The judgment of conviction is **AFFIRMED,** the sentence is **VACATED,** and the case is **REMANDED** for resentencing in accordance with this opinion.