NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0432n.06

Case No. 07-6222

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Jun 24, 2009**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| NAAMAN MCCASTER, | ) | DISTRICT OF TENNESSEE |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| _____ | ) | |

BEFORE: NORRIS, BATCHELDER, and KETHLEDGE, Circuit Judges.

ALICE M. BATCHELDER, Circuit Judge. Naaman McCaster challenges his sentence

for obstructing interstate commerce by robbery, in violation of 18 U.S.C. §§ 1951 and 2, and for

brandishing a firearm during the commission of a crime of violence, in violation of 18 U.S.C. §

924(c). McCaster argues only that the district court erred in applying a vulnerable victim

enhancement under U.S.S.G. § 3A1.1(b)(1). For the reasons that follow, we **AFFIRM**.

I.

On August 3, 2006, McCaster and Joyia Taylor walked into Lee's Jewelers on Winchester

Road in Memphis. The lone employee in the store at that time was Vongsavan Phombandit, who

was behind the counter with her two-year-old son. McCaster and Taylor found an engagement ring

that they said they wanted to place on layaway. The two left, telling Phombandit that they were

headed to the bank to get $100 for a deposit on the ring. Some time later, they returned and

-1-

identified other items that they wanted to purchase on layaway. Taylor handed Phombandit a one-hundred-dollar bill; when Phombandit turned to the place the bill in the register, McCaster hurdled the counter and began attacking her in front of her son.

McCaster gripped Phombandit's neck in a chokehold, held a gun to her head, and hit her repeatedly, even after she had fallen to the floor. He then dragged her along the ground by her neck and hair to a back room, where he handcuffed her hands behind her back and duct taped her feet together, and kicked and pistol-whipped her after she was restrained. Again pressing a gun to her head, McCaster demanded that she reveal the location of the store's security videotape. When Phombandit told him that there was no videotape, McCaster said that he would kill her and her baby if she did not tell him where it was. Phombandit told him that the surveillance footage was recorded on a computer that sat nearby, and he unsuccessfully attempted to destroy the computer by slamming it onto the floor and yanking some wires. McCaster grabbed the child from behind the jewelry counter, took him to Phombandit in the back room, and closed them both inside. He then joined Taylor in the showroom, where he helped her empty the cash register and jewelry cases. After the two had left, Phombandit — bleeding profusely and struggling to stay conscious — somehow managed to get back to the showroom and dial 9-1-1.

McCaster pleaded guilty to one count of obstructing interstate commerce by robbery, in violation of 18 U.S.C. §§ 1951 and 2, and one count of brandishing a firearm during the commission of a crime of violence, in violation of 18 U.S.C. § 924(c). The Presentence Investigation Report ("PSR") prepared for McCaster assessed a two-level increase under U.S.S.G. § 3A1.1(b)(1) because Phombandit's son was an unusually vulnerable victim due to his age. McCaster objected to the proposed enhancement, arguing that he and Taylor would have robbed the store "regardless of

-2-

whether Ms. Phombandit had a two year old son there or not" and that U.S.S.G. § 3A1.1(b)(1) requires the presence of a vulnerable victim to be "either an enabling factor or a deciding factor as to why the offense occurred."

The district court held that U.S.S.G. § 3A1.1(b)(1) does not require the victim's vulnerability to be "a motivating factor" in the defendant's decision to commit the offense; it held that the question was whether McCaster knew or should have known "that there was an unusually vulnerable victim there." In deciding that question, the court found:

> [A] review of the [store's surveillance] tape demonstrates and a view of the still photograph demonstrates that the child was present in the middle of the store. You could see in the photograph — several photographs in Exhibit 1 where the child's play area was. There is a blanket and there are toys there. . . . [A] review of the video tape . . . demonstrate[s] that the child was toddling about during part of these events . . . .[L]ooking at the photographs . . . will clearly demonstrate that anyone coming into the store would have been aware of the presence of the child. The child was mobile. The counters surrounded a large open area. The child's play area was in that area. And anyone could see the child was there and you could see on the video that the child was moving about while Mr. McCaster — Mr. McCaster and Ms. Taylor were reviewing jewelry, and whatnot, before they — before Mr. McCaster came across the counter. Indeed, the child was very close to the child's mother when Mr. McCaster did leap the counter and assault the mother from behind.

The court thus found that McCaster knew or should have known of the child's vulnerability.

Including the two-level U.S.S.G. § 3A1.1(b)(1) enhancement, the court arrived at a Guidelines range of 168 to 210 months for the robbery charge. The court imposed a sentence of 210 months' imprisonment on that charge and 84 months' imprisonment for the gun charge, to be served consecutively for a total sentence of 294 months. McCaster timely filed a Notice of Appeal.

## II.

We review the district court's sentencing decision "'under a deferential abuse-of-discretion standard[]' for reasonableness[.]" *United States v. Bolds*, 511 F.3d 568, 578 (6th Cir. 2007) (quoting

-3-

*Gall v. United States*, 552 U.S. 38, ___, 128 S.Ct. 586, 591 (2007)). McCaster's sole argument on appeal is that the district court erred in increasing his offense level by two pursuant to U.S.S.G. § 3A1.1(b)(1); he thus challenges only the procedural reasonableness of his sentence. For a sentence to be procedurally reasonable, the district court must not have committed any significant procedural errors, "such as failing to calculate (or improperly calculating) the Guidelines range . . . ." *Gall*, 128 S. Ct. at 597. "In reviewing a district court's application of the Sentencing Guidelines, this Court will 'accept the findings of fact of the district court unless they are clearly erroneous and [will] give due deference to the district court's application of the Guidelines to the facts.'" *United States v. Moon*, 513 F.3d 527, 539-40 (6th Cir. 2008) (quoting *United States v. Williams*, 355 F.3d 893, 897-98 (6th Cir. 2003)). "We review a district court's legal conclusions regarding the Sentencing Guidelines *de novo*." *Id.* (citing *United States v. Latouf*, 132 F.3d 320, 331 (6th Cir.1997)).

**III.**

U.S.S.G. § 3A1.1(b)(1) provides that a defendant's offense level is to be increased by two levels if he "knew or should have known that a victim of the offense was a vulnerable victim[.]" Application Note 2 to Section 3A1.1 defines a "vulnerable victim" as "a person (A) who is a victim of the offense of conviction and any conduct for which the defendant is accountable under [U.S.S.G. § 1B1.3] (Relevant Conduct); and (B) who is unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to the criminal conduct." U.S.S.G. § 3A1.1 cmt. n.2 (2006). Application Note 2 further explains that "[s]ubsection (b) applies to offenses involving an unusually vulnerable victim in which the defendant knows or should have known of the victim's unusual vulnerability." *Id.*

McCaster does not deny that Phombandit's two-year-old son was a victim of the robbery; nor

-4-

does he deny that the child was unusually vulnerable. McCaster does not even deny that he knew or should have known of the child's unusual vulnerability. His only argument is that because he did not intentionally exploit the child's vulnerability in committing the robbery, he did not display the higher degree of criminal depravity that the Sentencing Commission intended to punish through U.S.S.G. § 3A1.1(b)(1). This argument is wholly without merit.

There once was a time when this court "conditioned the imposition of this enhancement on the requirement that a defendant actually have 'targeted' a victim because of his or her vulnerability." *United States v. Brawner*, 173 F.3d 966, 973 (6th Cir. 1999) (citing *United States v. Smith*, 39 F.3d 119, 122-24 (6th Cir. 1994)). We "reached this conclusion based in great part upon the guidelines commentary that stated: 'This adjustment applies to offenses where an unusually vulnerable victim is made a target of criminal activity by the defendant.'" *Id.* (quoting U.S.S.G. § 3A1.1 cmt. n.1 (1994)). But as we explained in *Brawner*, soon after our decision in *Smith*, the Sentencing Commission amended the application notes to delete the "made a target" language, replacing it with the "knows or should have known" language. *Id.* (citing U.S.S.G. § 3A1.1 cmt. n.2 (1995)). We noted that the Commission's avowed purpose in amending the application notes was to clarify "that there is no requirement that a victim have been "made a target" because of his or her vulnerability." *Id.*

McCaster acknowledges all this, but he nonetheless emphasizes that he "did not deliberately prey on the child" and that "this robbery would have taken place regardless of the child's presence at the scene." McCaster essentially is asking us once again to read into Section 3A1.1(b)(1) a requirement that the defendant have intentionally targeted a victim because of his unusual vulnerability — a requirement that the Sentencing Commission and this court have expressly

disavowed. We decline his invitation. Even if we were to adopt McCaster's operative verb of choice, "exploit," his argument still would fail: Contrary to his assertion, he certainly did exploit the child's vulnerability in carrying out the robbery. McCaster threatened "to kill [Phombandit's] baby" if she did not tell him where the store's security videotape was, and Phombandit immediately complied with his demand. That he ultimately was unsuccessful in destroying the footage does not diminish his culpability. Moreover, McCaster proceeded with the robbery, including his brutal assault on Phombandit, knowing full well that the young child would witness the horrific crime and yet be unable to resist the attackers or assist his mother.

We also reject McCaster's contention that he did not display the degree of criminal depravity necessary to trigger an application of the vulnerable-victim enhancement. First of all, there is no additional quantum of depravity that a district court must find before it can augment a defendant's sentence under U.S.S.G. § 3A1.1(b). As the application notes make clear, so long as the defendant knows or has reason to know that his victim is unusually vulnerable, the district court may give him "an extra dollop of punishment." *United States v. Newman*, 965 F.2d 206, 212 (7th Cir. 1992).

And the depravity exhibited by McCaster in this case surely would surpass any threshold that we could articulate. McCaster forced this two-year-old child to watch as he choked, punched, and pistol-whipped the child's mother and dragged her to a back room. McCaster later shut the child inside that room, where the little boy watched as his bleeding mother, handcuffed and bound at the legs, fought to stay conscious and to escape. At McCaster's sentencing hearing, Phombandit testified that her son "was terrified so bad when he saw everything." She explained that the child continued to be traumatized by what he had witnessed:

> Every time he watch when I just leave, he would just put his hands behind his back

to remind him that's how mamma was, or if he see cops on TV, he would do the same thing. I just tell him, "Baby, don't do that, mama is okay." But he is still reminded of it. And my son, he has a lot of emotional distress about what happened.

For McCaster to argue that his "conduct toward the child in this case was not the type of conduct Section 3A1.1(b) was intended to punish" displays a level of brass uncommon even among thieves.

**IV.**

Accordingly, we **AFFIRM** the district court's judgment and sentence.